THOMAS M. RIFFEY AND MARIA RIFFEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Riffey v. Commissioner
Docket No. 6530-91
United States Tax Court
T.C. Memo 1992-426; 1992 Tax Ct. Memo LEXIS 441; 64 T.C.M. (CCH) 289; July 27, 1992, Filed *441 Decision will be entered for respondent. For Petitioners: Ron Scharf. For Respondent: John W. Duncan. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency and an addition to tax in petitioners' Federal income tax as follows: Addition to tax
Year
Deficiency
Sec. 6651(a)
1987
$ 7,241.70
$ 4,060.43
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioners failed to demonstrate that the lump-sum payment of $ 71,699.18 received in 1987 was from a source other than a qualified retirement plan for purposes of section 72(t), and (2) whether petitioners are liable for an addition to tax under section 6651(a)(1) for failure to timely file their 1987 income tax return. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners were husband and wife and resided in Girard, Illinois, at the time they filed their petition. References *442 to petitioner in the singular are to Thomas M. Riffey. In 1988, petitioners were in the process of obtaining a divorce. Petitioners filed their joint Federal income tax return for 1987 on December 19, 1988. In 1979, petitioner started working at Drexel Burnham & Co., Inc. (hereinafter Drexel), where he was an account executive. He took a leave of absence from Drexel in August of 1986. In 1987, he terminated his employment with Drexel and received a payment of $ 717.88 from Drexel's employee profit-sharing plan and a payment of $ 71,699.18 from Drexel's stock compensation program. On their 1987 income tax return, petitioners reported the $ 72,417.06 received from Drexel as funds from a qualifying pension, profit sharing, or stock bonus plan. Petitioner did not roll over any part of the distributions received from Drexel into an individual retirement account or other qualified plan. Petitioner, born in 1949, turned 38 in 1987. [1]
*443 OPINION Respondent determined petitioners are liable for an additional tax of 10 percent on early distributions from a qualified plan subject to section 72(t) for taxable year 1987. Respondent's determination is presumed to be correct, and petitioners bear the burden of proving respondent erred. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). On their 1987 Federal income tax return, petitioners attached a Form 4972, Tax on Lump-Sum Distributions, on which they stated that the $ 71,699.18 lump-sum payment from Drexel's stock compensation program came from a qualifying plan (hereinafter the payment). They now contend, after receiving a notice of deficiency, that the 1987 tax return was incorrectly filed and the payment came from an incentive stock option plan, rather than a qualified pension plan. This contention is supported solely by the testimony of Mr. Leffler, petitioners' C.P.A., and petitioner. Respondent, on the other hand, contends petitioners were correct in their 1987 tax return when they characterized the payment as a lump-sum distribution from a qualifying pension, profit-sharing, or stock bonus plan. Qualified pension, profit-sharing, *444 and stock bonus plans are defined in section 401(a). Section 401(a)(4) contains strict antidiscrimination requirements. [2] Distributions from a qualifying plan are subject to section 402. As a general rule, section 402(a)(1) provides that the amount distributed by any plan described in section 401(a) shall be taxable to the distributee in the year distributed under section 72. Section 72(t) further provides for a 10-percent additional tax on early distributions from a qualified retirement plan unless certain exceptions apply. Petitioners do not contend that any of the exceptions apply to them. Rather, they contend that section 72 is inapplicable to the payment because Drexel's stock compensation program (hereinafter the plan) is not a qualified retirement plan as defined in section 401(a). *445 Petitioners argue the plan could not have been a qualified plan because it discriminated in favor of highly compensated employees. Petitioner testified that only account executives earning over $ 100,000 qualified for the plan, but he did not introduce into evidence a copy of the plan to prove that the plan actually discriminated in violation of section 401(a)(4). Petitioner became eligible for the plan in 1980 and remained eligible until 1986 when he took a leave of absence. He testified, however, that he did not become aware of the stock compensation plan until 2 to 3 years after he qualified, and that he never saw any documents pertaining to the plan. Petitioner did not call any Drexel employees to substantiate his contention. Furthermore, the issue of the existence of discrimination in respect to a plan is a question of fact which must first be determined by the Commissioner. Ed & Jim Fleitz, Inc. v. Commissioner, 50 T.C. 384, 390 (1968). Here, the Commissioner did not determine the existence of discrimination. Accordingly, we find petitioner failed to prove that the payments came from a discriminatory plan. Next, petitioners argue the plan could *446 not have been a qualified plan because it is an incentive stock option plan. Incentive stock option plans are covered by section 422. Petitioners presented no evidence attesting to the existence of any options nor that petitioner ever exercised any such option. Furthermore, section 422 includes a number of requirements which must be met in order for an option issued thereunder to be recognized as an incentive stock option plan. [3] Mr. Leffler testified that a former Drexel employee confirmed his belief that petitioner's payment was from an incentive stock option plan that "was just for the guys making the big money." Again, this individual did not testify. The presumption is that the evidence would not have been favorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). The record is devoid of any credible evidence, testimonial or documentary, attesting to the fact that any options existed or that the requirements of section 422 were met. Therefore, we find petitioners failed to prove the funds came from an incentive stock option plan. *447 Petitioners have failed to prove the payment came from a source other than a qualified plan. We are not convinced that the payment came from a plan that discriminated or from an incentive stock option plan. Accordingly, we uphold respondent's determination that petitioners were liable for the 10-percent additional tax on the lump-sum distribution received in 1987. Respondent has also determined petitioners are responsible for an addition to tax for 1987 as provided in section 6651(a)(1). Section 6651(a)(1) provides for an addition to tax for failure to file a return when it is due "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". Petitioners admit their return was filed approximately 8 months late. Petitioners have the burden of proof with respect to this issue. United States v. Boyle, 469 U.S. 241, 245 (1985); Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974); Bebb v. Commissioner36 T.C. 170, 173 (1961). We have held that some personal difficulties can constitute reasonable *448 cause for late filing. See Hayes v. Commissioner, T.C. Memo. 1967-80 (where family illness, along with taxpayer's own illness and hospitalization, and the fact his personal records were not accessible because they were located in a different State were adequate reasons for taxpayer's late filing). However, it is well settled that a plea of being "too busy" is insufficient to relieve a taxpayer of his obligations to timely file his tax return. Dustin v. Commissioner, 53 T.C. 491, 507 (1969), affd. 467 F.2d 47, 50 (9th Cir. 1972); Weiland v. Commissioner, T.C. Memo. 1982-601; Bagatin v. Commissioner, T.C. Memo. 1981-538. We have also held a taxpayer's testimony that he was involved in a messy divorce and separation, that he was on the City Council, that he was trying to save a bankrupt company, and that he did not have enough time to file timely was not sufficient to establish reasonable cause for a delay. Weiland v. Commissioner, T.C. Memo. 1982-601. Here, the only evidence presented to establish reasonable cause for petitioners' late filing was petitioner's testimony *449 that he was going through a divorce and had difficulty in obtaining documents and paper work; and petitioner's accountant's testimony that in 1988 petitioner started a new business and was very busy. These facts do not establish reasonable cause for the delay. A taxpayer should not take on responsibilities which prevent him from fulfilling his own legal obligations within the required time period. Dustin v. Commissioner, supra.
Accordingly, we hold petitioner is liable for the addition to tax under section 6651(a)(1). Decision will be entered for respondent. Footnotes
1. Because petitioner had not attained the age of 50 by Jan. 1, 1986, he incorrectly used Form 4972 to elect the 5-year averaging method of taxation for the lump-sum distribution he received from Drexel. See Tax Reform Act of 1986, Pub. L. 99-514, sec. 1122(h)(3), 100 Stat. 2470. Since respondent did not address this issue, we decline to do so.↩
2. SEC. 401(a) provides in pertinent part: Requirements for Qualifications. -- A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section -- * * * (4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are -- (A) officers, (B) shareholders, or (C) highly compensated.↩
3. SEC. 422. INCENTIVE STOCK OPTIONS. * * * (b) Incentive Stock Option. -- For purposes of this part, the term "incentive stock option" means an option granted to an individual for any reason connected with his employment by a corporation, if granted by the employer corporation, or its parent or subsidiary corporation, to purchase stock of any of such corporations, but only if -- (1) the option is granted pursuant to a plan which includes the aggregate number of shares which may be issued under options and the employees (or class of employees) eligible to receive options, and which is approved by the stockholders of the granting corporation within 12 months before or after the date such plan is adopted; (2) such option is granted within 10 years from the date such plan is adopted, or the date such plan is approved by the stockholders, whichever is earlier; (3) such option by its terms is not exercisable after the expiration of 10 years from the date such option is granted; (4) the option price is not less than the fair market value of the stock at the time such option is granted; (5) such option by its terms is not transferable by such individual otherwise than by will or the laws of descent and distribution, and is exercisable, during the lifetime, only by him; and (6) such individual, at the time the option is granted, does not own stock possessing more than 10 percent of the total combined voting power of all classes of stock of the employer corporation or of its parent or subsidiary corporation.↩